```
 1                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MISSISSIPPI
 2
    UNITED STATES OF AMERICA       .       Cause No. 3:08CR89
 3                                 .
               Plaintiff           .       Oxford, Mississippi
 4                                 .       January 22, 2009
               v.                  .       11:30 a.m.
 5                                 .
    JEFFREY ROGERS                 .
 6                                 .
               Defendant           .
 7  . . . . . . . . . . . . . . . .

 8
              WAIVER OF INDICTMENT / FILING OF INFORMATION
 9               PLEA AS TO COUNT 1 OF THE INFORMATION
                BEFORE THE HONORABLE MICHAEL P. MILLS
10                    U.S. CHIEF DISTRICT JUDGE

11
    APPEARANCES:
12
    For the Government:         KATHLEEN J. MONAGHAN, ESQ.
13                              U.S. Department of Justice
                                601 D. Street NW
14                              5th Floor, Room 5339
                                Washington, DC 20004
15
                                United States Attorney's Office
16                              Northern District of Mississippi
                                BY:  ROBERT COLEMAN, ESQ.
17                              900 Jefferson Avenue
                                Oxford, Mississippi  38655-3608
18

19  For the Defendant:          CHRISTI R. MCCOY, ESQ.
                                Attorney at Law
20                              1739 University Avenue PMB 252
                                Oxford, Mississippi 38655
21

22  Court Reporter:             Rita Davis Sisk, FCRR, RPR
                                911 Jackson Avenue, Room 369
23                              Oxford, Mississippi  38865
                                (662) 416-2038
24
    Proceedings recorded by mechanical stenography, transcript
25  produced by computer.
```

1  (CALL TO ORDER OF THE COURT)

2  **THE COURT:** Madam Clerk, would you call the docket,
3  please.

4  **THE COURTROOM DEPUTY:** Court calls Cause No.
5  3:08CR89, *United States of America v. Jeffrey Rogers*. This a
6  waiver of the indictment, filing of information and plea to
7  Count 1 of the information.

8  **THE COURT:** All right. Who speaks for the
9  Government?

10  **MS. MONAGHAN:** Kathleen Monaghan, along with Mr. Rob
11  Coleman.

12  **THE COURT:** All right. And for the defense?

13  **MS. MCCOY:** Christi McCoy, Your Honor, along with
14  Jeffrey Rogers.

15  **THE COURT:** Are you ready to plead your client?

16  **MS. MCCOY:** I am, Your Honor.

17  **THE COURT:** If you would come forward, please.

18  (PARTIES COMPLYING).

19  **THE COURT:** Would you administer the oath.

20  (OATH ADMINISTERED BY THE COURTROOM DEPUTY).

21  **THE COURT:** All right. Is your true name Jeffrey
22  Rogers?

23  **THE DEFENDANT:** Yes, sir.

24  **THE COURT:** And I'm told that you wish to waive
25  indictment and plead guilty to the charge set forth in the

1  information in this case; is that correct?
2      **THE DEFENDANT:**  Yes, sir.
3      **THE COURT:**  Has he signed the waiver, Ms. McCoy?
4      **MS. MCCOY:**  The waiver is right here, Your Honor.
5      **THE COURT:**  Would you have him sign it, and I'll ask
6  you to sign it, please.
7      **MS. MCCOY:**  I certainly will.
8    (Parties complying.)
9      **THE COURT:**  All right.  I'll ask that be filed.
10    Mr. Rogers, before accepting your plea, there are a number
11  of questions that I must ask you.  If at any time you don't
12  understand the question or you wish to consult with your
13  attorney, you simply let me know.  Okay?
14      **THE DEFENDANT:**  Yes, sir.
15      **THE COURT:**  Do you understand that you are under oath
16  and any answers to these questions are subject to the penalties
17  of perjury, that is, making a false statement under oath if you
18  do not answer them truthfully?
19      **THE DEFENDANT:**  Yes, sir.
20      **THE COURT:**  What is your full name and age?
21      **THE DEFENDANT:**  Jeffrey Wade Rogers, 24, sir.
22      **THE COURT:**  How far did you go in school?
23      **THE DEFENDANT:**  All the way through high school, sir.
24      **THE COURT:**  Are you currently under the influence of
25  any drug, medication, or alcoholic beverage of any kind?

1         **THE DEFENDANT:** No, sir.

2         **THE COURT:** Do you think you fully understand what is
3 happening here today?

4         **THE DEFENDANT:** Yes, sir.

5         **THE COURT:** Ms. McCoy, you have talked with your
6 client today and earlier, I presume.

7         **MS. MCCOY:** Yes, Your Honor.

8         **THE COURT:** Do you have any questions about his
9 competency to enter a plea at this time?

10        **MS. MCCOY:** I do not, Your Honor.

11        **THE COURT:** Does the Government have any concerns
12 regarding this defendant's competency to enter a plea?

13        **MS. MONAGHAN:** No, Your Honor.

14        **THE COURT:** Well, I find this defendant is competent
15 to enter a plea. Have you had ample opportunity to discuss
16 your case with your attorney?

17        **THE DEFENDANT:** Yes, sir.

18        **THE COURT:** Are you satisfied with her representation
19 of you?

20        **THE DEFENDANT:** Yes, sir.

21        **THE COURT:** Do you feel that she has competently
22 represented your best interests in this matter?

23        **THE DEFENDANT:** Yes, sir.

24        **THE COURT:** Do you understand under the Constitution
25 and laws of the United States you are entitled to a trial by

1  jury on this charge?

2      **THE DEFENDANT:** Yes, sir.

3      **THE COURT:** Do you understand that at trial you'd be
4  presumed innocent and the Government would be required to prove
5  you guilty beyond a reasonable doubt before you could be found
6  guilty; and you would not be required to prove your innocence?

7      **THE DEFENDANT:** Yes, sir.

8      **THE COURT:** Do you further understand that in the
9  course of the trial witnesses for the Government would have to
10 come into court and testify in your presence; your attorney
11 could cross-examine the witnesses for the Government and could
12 also call other witnesses to testify on your behalf?

13     **THE DEFENDANT:** Yes, sir.

14     **THE COURT:** Are you aware that if you wished to
15 testify yourself in your own defense you would have that right
16 to do so, but if you chose not to testify no inference or
17 suggestion of guilt would be drawn by you so choosing?

18     **THE DEFENDANT:** Yes, sir.

19     **THE COURT:** If you plead guilty here today and if I
20 accept your plea, do you understand that you are going to waive
21 your right to trial and the other rights I have just discussed
22 with you?

23     **THE DEFENDANT:** Yes, sir.

24     **THE COURT:** That means there will not be a trial, and
25 I will enter a judgement of guilty and sentence you on the

1  basis of your guilty plea after considering the pre-sentence
2  report.  Do you understand that?
3         **THE DEFENDANT:**  Yes, sir.
4         **THE COURT:**  Having discussed these rights with you,
5  is it still your desire to plead guilty to this information?
6         **THE DEFENDANT:**  Yes, sir.
7         **THE COURT:**  Have you received a copy of the charge
8  against you?
9         **THE DEFENDANT:**  Yes, sir.
10        **THE COURT:**  And you understand that you're charged
11 with depriving rights under color of law?
12        **THE DEFENDANT:**  Yes, sir.
13        **THE COURT:**  I'm going to ask the U.S. Attorney to
14 read into the record the elements, please.
15        **MS. MONAGHAN:**  Yes, Your Honor.  For a misdemeanor
16 violation of United States Code, Title 18, Section 242, the
17 elements are:  While the defendant was acting under color of
18 law, he deprived.  The second element is deprivation of a right
19 guaranteed by the laws or the Constitution of the United
20 States.  In this case, it is the right to be free from
21 deprivation of liberty without due process.  And then, also,
22 that when the defendant deprived the victim of the due process
23 rights, that he did so willfully.
24        **THE COURT:**  Okay.  Do you have any questions about
25 this charge?

1 **THE DEFENDANT:** No, sir.

2 **THE COURT:** Do you understand the maximum penalty you
3 could be sentenced to?

4 **THE DEFENDANT:** Yes, sir.

5 **THE COURT:** And I'm going to ask the -- I believe
6 you're pleading to a misdemeanor.

7     Is that correct, Ms. Monaghan?

8 **MS. MONAGHAN:** That is correct, Your Honor.

9 **THE COURT:** So you have not more than one year
10 imprisonment, $100,000 fine; one year supervised release; and a
11 mandatory $25 special assessment. And those are the maximums.
12 You understand that?

13 **THE DEFENDANT:** Yes, sir.

14 **THE COURT:** Has anybody threatened you or forced you
15 to plead guilty?

16 **THE DEFENDANT:** No, sir.

17 **THE COURT:** Has there been a plea agreement entered
18 into?

19 **MS. MONAGHAN:** There has been, Your Honor.

20 **THE COURT:** Would you state into the record the
21 substance of the plea agreement, please?

22 **MS. MONAGHAN:** Yes, Your Honor. According to the
23 plea agreement, the defendant's agreements are: That he plead
24 guilty to Count 1 of the information charging a misdemeanor
25 violation of Title 18, United States Code, Section 242.

1	The defendant agrees to plead guilty to a misdemeanor
2	violation and entered into this plea agreement because the
3	defendant knowingly committed the offense and is guilty of this
4	offense.
5	The defendant understands the maximum sentence that Your
6	Honor has just described.  Furthermore, the defendant further
7	agrees to resign from law enforcement position, to surrender,
8	resign, terminate, and/or otherwise relinquish his Peace
9	Officer Standards Training (or P.O.S.T.) certification and to
10	never seek future employment in law enforcement again.
11	The defendant agrees that the Government reserves the
12	right to notify P.O.S.T. of this guilty plea and to furnish
13	P.O.S.T. with a copy of the certificate of conviction and
14	judgment in this case.
15	The defendant has agreed that the United States Sentencing
16	Guidelines will apply to this case.  And the applicable
17	guidelines to be used begin with Section 2H1.1,
18	cross-referencing to Section 2A2.2.
19	Relevant conduct:  The defendant has agreed that the
20	United States Sentencing Guidelines apply.  The United States
21	and the defendant understand that all uncharged related
22	criminal activity is deemed relevant conduct for the purpose of
23	calculating the offense level for the crime to which the
24	defendant has agreed to plead guilty.
25	The defendant has knowingly and voluntarily waived any

right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction or the components of the sentence to be imposed.

The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the conviction and sentence imposed; but by entering into this plea agreement, the defendant knowingly waives any right to appeal his conviction or sentence imposed, which is within or below the guideline range determined by this Court.

Violations of this agreement: The defendant understands and agrees that in the event the defendant breaches or otherwise violates this plea agreement or otherwise fails to adhere to its terms all statements made by the defendant subsequent to the execution of this plea agreement, any testimony given by the defendant before a grand jury or other tribunal or any leads from which such statements or testimony shall be admissible against the defendant in any and all criminal proceedings.

The defendant specifically waives any rights which might be asserted under the United States Constitution, any statute, Federal Rules of Criminal Procedures 11(F), Federal Rules of Evidence 410 and any other federal rule that permits the admissibility of any statement made by the defendant subsequent to this plea agreement. The parties recognize that this is the full extent of the agreement.

1  Representation by counsel: As the defendant has already
2  acknowledged, the defendant acknowledges that he's been
3  represented by an attorney at all relevant times during the
4  negotiation of the agreement; and that he's satisfied with the
5  advice, counsel and representation he received.
6  The Government's agreements in exchange for all of this,
7  Your Honor, is to request at sentencing that the indictment
8  previously filed in this case to be dismissed and not to file
9  any additional charges against the defendant that are arising
10 out of the acts forming the basis for the present indictment
11 and to recommend a three-point reduction in the applicable
12 offense level pursuant to the United States Sentencing
13 Guideline Section 3E1.1.
14 **THE COURT:** All right. Thank you.
15 Mr. Rogers, you heard the prosecutor state her
16 understanding of the agreement that you entered into with the
17 Government. Did she accurately state it as you understand it
18 to be?
19 **THE DEFENDANT:** Yes, sir.
20 **THE COURT:** And has anybody made any -- has anybody
21 attempted in any way to force you to plead guilty?
22 **THE DEFENDANT:** No, sir.
23 **THE COURT:** Are you pleading guilty of your own free
24 will because you are guilty?
25 **THE DEFENDANT:** Yes, sir.

1      **THE COURT:** And you understand that this is a
2 misdemeanor that you're pleading to; and that under the plea
3 agreement, which I'm going to accept, that there are also
4 guidelines for judges to follow? Have you discussed the
5 guidelines with your attorney?
6    (AFTER OFF-THE-RECORD COMMENTS, THE PROCEEDING CONTINUED).
7      **THE DEFENDANT:** Yes, sir.
8      **THE COURT:** And the sentencing guidelines -- I'm
9 going to accept your plea agreement. If I decide not to accept
10 it, I would allow you to withdraw your plea.
11      **THE DEFENDANT:** Yes, sir.
12      **THE COURT:** So there's a limit under your plea
13 agreement as to how much time you can get. But do you
14 understand that there are also guidelines that we look at in
15 determining how much to sentence you?
16      **THE DEFENDANT:** Yes, sir.
17      **THE COURT:** Okay. And do you understand that I will
18 not be able to determine the guideline sentence for your case
19 until after the presentence report has been completed and you
20 and the Government have had an opportunity to challenge the
21 reported facts and the application of the guidelines
22 recommended by the probation officer; and the sentence to be
23 imposed, subject to your plea agreement, could be different
24 from any estimate your attorney may have given you?
25      **THE DEFENDANT:** Yes, sir.

1    **THE COURT:** Do you understand that parole has been
2 abolished; and if you are sentenced to prison, you will not be
3 released on parole?
4    **THE DEFENDANT:** Yes, sir.
5    **THE COURT:** Do you understand that you've waived your
6 rights to appeal under this plea agreement?
7    **THE DEFENDANT:** Yes, sir.
8    **THE COURT:** What is the Government's evidence against
9 this defendant?
10    **MS. MONAGHAN:** Your Honor, had this case gone to
11 trial, the Government would have established, via competent
12 evidence, all of the essential elements of this crime. We
13 would have done so by the following facts, Your Honor: On June
14 9th, 2007, Defendant William Rogers, then a deputy sheriff for
15 Tippah County, Mississippi, pulled over J.H. for traffic
16 offenses, arrested him and took him to the Tippah County jail.
17    While at the jail, J.H. was an obnoxious arrestee, cursing
18 at William Rogers, Defendant Jeffrey Rogers, who was a
19 part-time deputy sheriff for Tippah County; and the other
20 officers present. The defendants became angry with J.H., took
21 him to a secure area of the jail, and placed him in an
22 isolation cell.
23    Once in the isolation cell, Defendants William Rogers and
24 Jeffrey Rogers each tasered J.H. repeatedly, without
25 justification, until J.H. lost control of his bowels. As a

1  result of the unjustified tasering, J.H. suffered multiple
2  burns and contusions and significant physical pain.
3      Immediately following the unwarranted attack, Defendant
4  Jeffrey Rogers bragged and laughed about his and his father's
5  treatment of J.H. to coworkers, especially about the fact the
6  attack caused J.H. to soil himself.
7      After the incident, William Rogers wrote intentionally
8  misleading police reports in an effort to impede the
9  investigation into his and his son's abuse of J.H.  Likewise,
10 Jeffrey Rogers gave an intentionally misleading statement to a
11 special agent with the Federal Bureau of Investigation and
12 wrote intentionally misleading police reports also in order to
13 derail the federal investigation into the defendant's abuse of
14 J.H.
15         **THE COURT:**  Thank you.
16     Mr. Rogers, you heard the prosecutor state the evidence
17 that she had to present against you on this particular charge.
18 Did you do what she said you did?
19         **MS. MCCOY:**  Your Honor, there are some issues.  And I
20 think Ms. Monaghan and Mr. Farese and I have all discussed that
21 Mr. Rogers -- there are some things that were read that he
22 contests, as far as the procedure in which J.H. -- why he was
23 taken to the isolation cell, how many times he was tasered by
24 my client.
25      Those factual differences, they don't affect the guilt

1  process; but they definitely would affect the sentencing
2  process. And we have not agreed that he did some of those
3  things that were named by Ms. Monaghan.
4      **THE COURT:** Well, maybe he could tell the Court what
5  he did do.
6      **MS. MCCOY:** If that would be helpful, Your Honor, I
7  would be happy to have him explain his version of the events as
8  far as how they happened that evening. There's never been any
9  agreement or any conversation, to my knowledge, about anything
10 that happened post the incident with regard to falsifications
11 or anything like that. We've never agreed to that.
12     **THE COURT:** All right. Did you taser the gentleman
13 who was in the isolation cell?
14     **THE DEFENDANT:** Yes, sir.
15     **THE COURT:** Did you do it more than once?
16     **THE DEFENDANT:** I believe so, sir. I had the taser
17 in my hand, and we were -- he was being combative; and we were
18 fighting with him, sir.
19     **THE COURT:** Okay. Well, I don't know if that's
20 sufficient, if he was being combative, Ms. Monaghan.
21     **MS. MONAGHAN:** This is the first that I've heard of
22 this, Your Honor. We had a small statement of facts in the
23 plea agreement, which was actually the first paragraph of what
24 I read today. Maybe, perhaps, we have time to talk to counsel?
25     **THE COURT:** Well, if the subject was --

Case: 3:08-cr-00089-MPM-SAA Doc #: 40 Filed: 01/30/09 15 of 18 PageID #: 148

15

1  **MS. MONAGHAN:** In all our evidence, Your Honor, that
2  was not the case.
3  **THE COURT:** Okay. Well, maybe we should go to trial,
4  if he's going to say that the subject was resisting. Is that
5  what you said?
6  (AFTER OFF-THE-RECORD COMMENTS, THE PROCEEDING CONTINUED)
7  **THE COURT:** I'm not going to accept this plea.
8  **MS. MCCOY:** No, Your Honor. Maybe I can clear up
9  something and present it in a way -- Mr. Rogers has
10 acknowledged throughout that he tasered this defendant -- or
11 I'm sorry, he was a defendant at the time.
12 There's never been any statement or even agreement that
13 this suspect was being compliant. In fact, he fought the
14 entire way. There is also proof that Mr. Rogers and his
15 co-defendant, his father, William Rogers, put the suspect in
16 isolation at the direction of the sheriff.
17 As far as the repeated tasering, I believe Mr. Rogers used
18 his taser twice. He did taser this gentleman. And there was a
19 lot of question as to whether or not it was justified. In --
20 when we were working through that and in negotiations, the
21 Department of Justice offered Mr. Rogers a misdemeanor rather
22 than a felony.
23 Mr. Rogers is a member of the National Guard. He is set
24 to be deployed very soon. He was very interested in getting
25 this resolved. Once we cleared with his supervising officers

1 in the National Guard that it would not affect his job there,
2 it was his decision, and his decision alone, to enter a guilty
3 plea. I don't --
4     **THE COURT:** I'm not going to accept a plea to facts
5 that he doesn't agree with.
6     **MS. MCCOY:** Well, perhaps we could -- the statement
7 of the facts that are contained in the plea agreement are
8 completely different than what Ms. Monaghan just read, if that
9 makes any difference at all.
10     **THE COURT:** Well, it does. Even this little
11 proceeding is a search for the truth. And I want to know what
12 happened. I don't want what someone -- one side exaggerates is
13 happening, nor do I want someone to plead guilty to something
14 when they don't feel like that's what happened. You don't
15 enter into a plea because you want to go to war.
16     **MS. MCCOY:** I understand, Your Honor.
17     **THE COURT:** So I'm not going to accept this. We'll
18 continue this proceeding until a further time. I'll have a
19 chance to talk to Ms. Wilkerson, and we'll see when we can
20 reset it.
21     **THE CLERK:** It's actually currently set for trial on
22 Monday.
23     **THE COURT:** Okay. Well, that'll be fine because
24 those other matters have settled, haven't they?
25     **THE COURTROOM DEPUTY:** Yes, sir.

1     **MS. MONAGHAN:** And, Your Honor, with your permission,
2  if I may speak? As far as the statement of facts being
3  completely different than what I just read, that's incorrect,
4  Your Honor. I added, I believe, three sentences to the end of
5  it.
6     **THE COURT:** I don't care.
7     **MS. MONAGHAN:** And as to going to trial on Monday, as
8  I had informed the Court, I am currently before the Court in
9  trial; and at the beginning of that trial, *United States v.*
10 *Adam McHann*, I informed the Court that I was set for trial on
11 Monday in Atlanta. Right now that case is still set for trial.
12 We're trying to work it out, but there may not be --
13    **THE COURT:** Well, you need to get with Ms. McCoy and
14 see if you can work out something that y'all agree on. And if
15 you do, I will continue the hearing. But I'm not going to
16 allow him to plead to something when the facts that have just
17 been read into the record he says he disagrees with.
18    **MS. MONAGHAN:** Yes, Your Honor, I understand that.
19 And I want to inform the Court that it may put his father's
20 plea agreement in a precarious position.
21    **THE COURT:** Well, that's not my concern. I don't see
22 how it's related to his father's plea agreement. I don't see
23 any relationship. These are separate defendants.
24    **MS. MCCOY:** Yes, Your Honor, they are separate
25 defendants. But the Department of Justice has basically made

```
 1  it clear that it's an all-or-nothing deal.
 2          THE COURT:  Well, they didn't make that clear to me;
 3  and I'm the one who accepts the pleas.  And I have accepted his
 4  father's plea.  And I don't know that the Department of Justice
 5  can come in here and change the rules on that one.
 6       That's linkage.  And the Constitution applies to us as
 7  individuals.  We don't link criminal defendants for the
 8  purposes of deals.  So this matter is over.  Y'all can go talk;
 9  and if you work something else out, let me know.
10          MS. MONAGHAN:  Thank you.
11          THE COURT:  The Court will be in recess.
12              (THE HEARING ENDED AT 11:51 a.m.)
13
                        C E R T I F I C A T I O N
14
       "I certify that the foregoing is a correct transcript from
15  the record of proceedings in the above-entitled matter, January
    29th, 2009."
16                          /s/ Rita Davis Sisk_____
                            RITA DAVIS SISK, RPR, BCR, CSR #1626
17                          Official Court Reporter
18
19
20
21
22
23
24
25
```