```
                 UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF MISSISSIPPI


UNITED STATES OF AMERICA      .       Cause No. 3:08CR89
                              .
         Plaintiff            .       Oxford, Mississippi
                              .       April 30, 2009
           v.                 .       10:45 a.m.
                              .
JEFFERY ROGERS                .
                              .
         Defendant            .
. . . . . . . . . . . . . . . .




       SENTENCING AS TO COUNT 1 OF THE INFORMATION
           BEFORE THE HONORABLE MICHAEL P. MILLS
                U.S. CHIEF DISTRICT JUDGE



APPEARANCES:

For the Government:       KATHLEEN J. MONAGHAN, ESQ.
                          U.S. Department of Justice
                          601 D. Street NW
                          5th Floor, Room 5339
                          Washington, DC 20004

For the Defendant:        CHRISTI R. MCCOY, ESQ.
                          Attorney at Law
                          1739 University Avenue PMB 252
                          Oxford, Mississippi 38655


Court Reporter:           Rita Davis Sisk, FCRR, RPR
                          911 Jackson Avenue, Room 369
                          Oxford, Mississippi  38865
                          (662) 416-2038

Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

```
 1       (CALL TO ORDER OF THE COURT)
 2            THE COURT:  Madam Clerk, would you call the docket,
 3  please.
 4            THE COURTROOM DEPUTY:  Court calls Cause No.
 5  3:08CR89, United States of America v. Jeffery Rogers.  This is
 6  a sentencing as to Count 1 of the information.
 7            THE COURT:  All right.  Who speaks for the
 8  Government?
 9            MS. MONAGHAN:  Kathleen Monaghan, Your Honor.  And
10  with the Court's permission, joined at counsel table by Special
11  Agent Walter Henry with the FBI.
12            THE COURT:  All right.
13       And for the defense?
14            MS. MCCOY:  Good morning, Your Honor.  Christi McCoy
15  of Oxford here with my client, Jeffery Rogers.
16            THE COURT:  And are you ready for the sentencing of
17  your client?
18            MS. MCCOY:  I am, Your Honor.
19            THE COURT:  Before we begin, are there any unresolved
20  objections?
21            MS. MCCOY:  I believe so, Your Honor.
22            THE COURT:  All right.  Do we have some from the
23  Government?
24            MS. MONAGHAN:  We do, Your Honor.  They were the same
25  objections raised with the William Rogers case.
```

1          **THE COURT:**  All right.  And these were basically
2    comments on the narrative developed by the probation officer.
3    I'm going to deny those objections, though I have read them;
4    and you've put those facts before the Court.  Unless there are
5    objections that would affect the calculations of the
6    guidelines, I don't think we need to take it up any further.
7          **MS. MONAGHAN:**  Thank you, Your Honor.
8          **THE COURT:**  They will be denied.
9       And from the defense?
10         **MS. MCCOY:**  Your Honor, along those same lines, I
11   think your objections were more in line of comments.  The only
12   thing I would add is our objection to the information that was
13   proposed by the Government regarding what I call the "Pannell
14   incident," which allegedly happened back in the summer of '06.
15      I would like for the Court to know that my client, Jeffery
16   Rogers, was not taser-certified in July of '06.  He had no
17   access to a taser in July of 2006.  I have his taser
18   certification if Your Honor wishes to view that.
19      I know it doesn't affect the guidelines, but I think it is
20   important for the record to show the entire facts.  And the
21   facts of the matter are that Jeff Rogers had no access to a
22   taser in July of 2006 and certainly did not taser Mr. Pannell
23   or anyone else.
24         **THE COURT:**  All right.  Well, I'm going to accept
25   those comments because they're a little different than the

1  other case. So for the purpose of the record, your objection
2  is in here. And I'm going to allow it to be considered.
3  **MS. MCCOY:** Thank you, Your Honor. And if I may, I
4  would like to make his taser certification a part of the record
5  at some time.
6  **THE COURT:** All right. At this time. It'll be
7  Exhibit 1. And when was he certified?
8  **MS. MCCOY:** In October of 2006, October 14th, 2006,
9  Your Honor.
10  **THE COURT:** All right.
11  (EXHIBIT NO. 1 WAS RECEIVED INTO EVIDENCE).
12  **THE COURT:** Is there anything further, Ms. McCoy?
13  **MS. MCCOY:** No, Your Honor. Thank you.
14  **THE COURT:** All right. If you're ready for the
15  sentencing, I'll ask you to come forward, please.
16  (Parties complying.)
17  **THE COURT:** All right, Mr. Rogers, on a previous day,
18  you entered a plea of guilty to Count 1 of the information
19  charging deprivation of rights under color of law. You're now
20  before the Court for sentencing.
21  Ms. McCoy, have you reviewed the presentence report with
22  your client?
23  **MS. MCCOY:** Yes, Your Honor.
24  **THE COURT:** Other than the objections that I've just
25  ruled on, do you have any other objections?

1　　　　　**MS. MCCOY:** No, Your Honor.

2　　　　　**THE COURT:** All right.

3　　Mr. Rogers, is there anything you would like to say before sentencing?

5　　　　　**THE DEFENDANT:** Yes, Your Honor. I'd like to also state that I'm sorry to the Court, to my family, and the Hunsucker family for all the grief that this incident has caused everybody, Your Honor.

9　　　　　**THE COURT:** All right.

10　　Ms. McCoy, do you have anything to say?

11　　　　　**MS. MCCOY:** Yes, Your Honor. I know the Court is certainly aware of my client's history and characteristics based on the presentence report. However, I would like to go under the factors of 3553 if I may, Your Honor, and just make some statements regarding Mr. Rogers and his character.

16　　He has been a lifelong working man since he has been of age to work. He has worked and supported his family. For several years, he worked in law enforcement in the capacity as a reserve officer, Your Honor. It was a volunteer position. He did that out of his commitment to service.

21　　It's a commitment to service he learned from his father, as you know, who served very honorably in the United States Military. Jeff has worked for several years at Caterpillar. And his shift there begins when most of us are asleep, about three o'clock in the morning; and it ends a little after lunch.

1   And he has always preferred that shift, Your Honor, because it
2   allows him time in the afternoon to be with his boys.
3          As you've seen from the letters submitted on his behalf,
4   he is a very dedicated father.  He is a very important role not
5   only in his sons' lives but the lives of the other children in
6   the school and in the community.  He has served as a coach, as
7   a mentor, in many ways.  He has been such a good example to the
8   children of the community.
9          As far as the nature and circumstances of the offense,
10  Your Honor, I know it is a he said/she said; and somewhere in
11  the middle lies the truth.  I would say, however, that
12  credibility has got to play some factor in making a decision of
13  what happened and how it happened.
14         Again, as Mr. Farese said, I don't try to minimize or
15  diminish the seriousness of what happened.  I do think that
16  there are such mitigating circumstances, though, because
17  Mr. Rogers -- Mr. Jeffery Rogers, he came into the situation
18  kind of at the end of it, Your Honor.
19         We know from the many statements that were given that
20  Mr. Hunsucker, for well over an hour, berated, harassed,
21  threatened, and intimidated a number of officers.
22         The sheriff at the time ordered for him to go in the hole.
23  In the process of doing that, Mr. Will Rogers, on his own,
24  started that journey.  None of these other officers made any
25  move to assist Mr. Rogers, despite the fact that Jimmy Dale

1  Hunsucker had not only been obnoxious on that evening but was
2  well-known to him, well-known to them.
3       I think that's documented through the letters as well,
4  Your Honor, that Mr. Hunsucker certainly was not new.  And
5  again, a good indicator of future behavior is past behavior.
6  And based on what Mr. Rogers knew at the time he accompanied
7  Will Rogers -- and he didn't do that because that was his dad.
8       He did that because that was a fellow officer, and he
9  would have done it no matter what.  When they did get to the
10 holding area or the cell, Mr. Hunsucker became aggressive,
11 according to what my client saw.  Will Rogers pulled his taser;
12 Jeff Rogers did the same thing.  He expelled his taser twice,
13 Your Honor.
14      Now, to my knowledge, based on what has been said, there
15 was never an occasion where Mr. Hunsucker was held down and
16 tasered.  He was tasered.  It was wrong.  And I don't -- I'm
17 not diminishing that.  But I think it is important, Your Honor,
18 that if you compare what led those three men to that moment in
19 time, that their histories and their characteristics say a lot
20 about them and about how they behaved in that instant.
21      Jeff Rogers made a split-second decision.  He didn't have
22 time to stop and think, What should I do.  He followed the lead
23 of his senior officer.  He made a split-second decision.  He
24 has regretted it.  It was a mistake.  He understands that, Your
25 Honor.

1     He is set to deploy tomorrow, Your Honor. He is with the
2 unit going from Fulton that Mr. Farese mentioned,
3 Mr. Mitchell's unit. He is set to mobilize tomorrow. He will
4 be gone for 400 days to Iraq.
5     Nobody sentenced him to that, Your Honor. Nobody made him
6 do that. It's something that he has wanted to do for a long
7 time and has kind of had to fight with his mom and his wife
8 about it because I don't think they really wanted him to.
9     When this came about, he wanted to still do it. And of
10 course, the Guard was happy to have him and welcomed him. So
11 he is set tomorrow -- less than 24 hours he will be leaving.
12     Should this Court impose a prison sentence on him, not
13 only would he lose that, Your Honor, he would lose his job at
14 Caterpillar. As it stands now, because of their support for
15 the United States Government, Caterpillar not only holds his
16 position, but they match the pay that -- the difference in pay
17 between Caterpillar and his Service.
18     I do want to point out that to reflect seriousness and
19 promote respect for the law, Mr. Rogers has also resigned his
20 position in law enforcement and will never be in law
21 enforcement again, Your Honor. He is a very young man. This
22 will affect him for the rest of his life. That is a severe
23 punishment in and of itself.
24     He, as I said, started as a reserve in law enforcement and
25 had really hoped to work his way up to some type of full-time

1 law enforcement, not necessarily in Tippah County; but that was
2 something that he wanted to do just because of his commitment
3 to service. He can't do that, Your Honor; and that is a just
4 punishment.
5   I do want to mention, as far as the sentence disparity, a
6 couple of cases were mentioned here in Mr. Will Roger's case,
7 *USA v. Mitchell* wherein David Mitchell pled guilty to striking
8 an inmate and possibly using a shock stick a couple of times.
9 Pled to a felony, received probation.
10   I also want to mention the case of *U.S. v. Golden* that
11 Ms. Monaghan felt was similar to this case. And I do want to
12 point out to Your Honor that in that case Mr. Golden was a
13 correctional official, a prison guard, who was attacked by an
14 inmate who through feces at him.
15   Rather than respond immediately in the heat of the moment,
16 he waited; and basically, he lay in wait for the inmate until
17 the inmate was handcuffed and being transported, waited until
18 that inmate was alone and then beat him without mercy. So I do
19 want to point out that I find great dissimilarities between
20 those two cases.
21   What Jeff Rogers did, he made a split-second decision. He
22 did not think about it. He relied on his training. His
23 training had taught him, if someone is resistive or aggressive,
24 you taser. His senior officer pulled the taser; he did as
25 well. I'm not excusing his behavior, but I do think there is

1  mitigation.
2      I also want to point out the case of *United States v.*
3  *Fulwood and Gentry*, also a case, Your Honor, that myself and
4  Mr. Farese worked on, along with Ms. Monaghan. And in that
5  case, two officers pled to civil rights violations wherein they
6  conspired in the calm, working shift to violate someone's civil
7  rights.
8      Again, that was not a split-second decision. Those men
9  pled to a felony and also received probation. So I think,
10 given those cases in this district, Your Honor, that
11 Mr. Rogers' case is more similar to the *Mitchell* case because
12 it was a split-second decision. He relied on his training; he
13 made a decision.
14     It was the wrong decision, Your Honor. He accepts that.
15 His family has been traumatized by this in many, many ways and
16 will continue to be so. I ask Your Honor to allow Mr. Rogers
17 to continue his commitment to service, to allow him to mobilize
18 tomorrow with his unit, to serve his country, as he's
19 volunteered to do and to sentence him to a term of probation
20 and to allow him to avoid a prison sentence, Your Honor.
21         **THE COURT:** All right.
22     Ms. Monaghan?
23         **MS. MONAGHAN:** Thank you, Your Honor. Your Honor,
24 looking at the 3553 factors, nature and circumstances of this
25 offense, I believe we have covered this extensively in a prior

1  proceeding.  And if the Government can incorporate our comments
2  in order to keep it brief, I think Your Honor's comment that
3  this was an absolutely inhuman action by William Rogers and
4  Jeffery Rogers towards Jimmy Dale Hunsucker, Jr., is very clear
5  and concise; and the Government would agree with that and
6  believes that the Court really understands the nature and
7  circumstances.
8      Moving on to the characteristics of this particular
9  defendant, being a working man and certainly a reserve police
10 officer and ultimately a full-time police officer and now in
11 the military because of his commitment to service, it must be
12 noted, Your Honor, that, consistently, every interview that we
13 conducted of corrections officers and of police officers, be it
14 the sheriff's office or the Ripley Police Department, including
15 the defendant's own former supervisor when this incident
16 occurred, former Sheriff Brandon Vance, all informed us that
17 Mr. Jeffery Rogers loved the power that came with his badge.
18 And he enjoyed flaunting his authority over --
19         **MS. MCCOY:**  Your Honor, I'm going to object to
20 something that's not included anywhere in the record.  These
21 are statements that are alleged to have been made, but I
22 certainly don't think this is appropriate, as I've not seen
23 anything like that.
24         **THE COURT:**  Okay.  I sustain the objection.
25         **MS. MONAGHAN:**  It's the Government's position, based

1  on all of the evidence in the case, 302s that were provided to
2  probation for inclusion in the PSR to the defendant's
3  characteristics, that this defendant, while he argues that he
4  may have a commitment to service, that there is evidence that
5  belies that, if I may say that, Your Honor.
6         **THE COURT:** You may.
7         **MS. MONAGHAN:** Thank you. Also, turning to a few of
8  the mitigating factors, the claim that Jimmy Dale Hunsucker
9  became aggressive as he was entering the cell. According to an
10 eyewitness, that is not the case, simply not the case.
11     And certainly, according to that same eyewitness, that
12 both Jeffery Rogers and William Rogers had Mr. Jimmy Dale
13 Hunsucker down on a raised concrete area which was used for a
14 bed in that cell and were moving their arms back and forth and
15 back and forth and back and forth as if they were appearing to
16 hold Jimmy Dale Hunsucker down and motions that were consistent
17 with the use of a taser, and a taser was heard during the time
18 that the arm movements was being made and Jimmy Dale Hunsucker
19 was on that bed.
20     So as far as the evidence in the record, Your Honor, that
21 Jimmy Dale Hunsucker was held down by defendant William Rogers
22 and Jeffery Rogers and repeatedly tasered, there is evidence as
23 to that, Your Honor. It is a corrections officer or a jailer
24 in the jail who witnessed this at that time. In addition, we
25 have Mr. Jimmy Dale Hunsucker's statement.

1     And as far as -- as far as disparities -- or excuse me --
2  the use for deterrents, I believe we've already covered this in
3  the prior proceeding.  This is just inhumane conduct.  It's
4  flaunting the power of the badge and being able to treat
5  someone without care for them as a human being because of the
6  power that's afforded to them because of their badge.
7     We must send a message -- while this individual will never
8  be allowed to be in law enforcement again because of the terms
9  of his plea agreement, we must send a message to others in law
10 enforcement who would seek to act in a similar fashion that
11 this is truly unacceptable.  Just because you have a badge and
12 a gun, you cannot, you cannot, repeatedly taser someone because
13 they have made you angry over a period of time.
14    And finally, Your Honor, the disparity, I believe we've
15 covered this also in the previous sentence.  It still remains
16 the Government's position that this case is much more akin to
17 *United States v. Golden* than it would be *United States v.*
18 *Mitchell* or even *United States v. Fulwood and Gentry* because of
19 the actions that occurred here.
20    This was, as according to this defendant's own words, he
21 and his father, co-defendant William Rogers, took turns
22 popping -- that was their word, *popping* the victim, for two
23 minutes of time until he defecated on himself.  And while
24 Jeffery Rogers spoke those words to his colleagues, he was
25 laughing and joking; and according to the colleague, appeared

1 to be very pleased with what he had just done to Jimmy Dale
2 Hunsucker.
3 Those facts and circumstances of the case, Your Honor, are
4 completely different from Fulwood and Gentry who never laid a
5 hand on the victim. And certainly much different from David
6 Mitchell who was actually convicted, again, of a single strike
7 and possible use of a shock stick against an inmate.
8 And then finally, Your Honor, the fact that the defendant
9 is due to deploy tomorrow, if Your Honor is contemplating a
10 prison sentence, which the Government respectfully requests
11 that the defendant be sentenced to 12 months in prison, along
12 with the guideline range, because he is deploying tomorrow and
13 would be gone for 400 days, the Government would request that
14 if this defendant is to be ordered to incarceration that he
15 start serving his incarceration today; that he be retained in
16 the United States' custody as of today to allow him to serve
17 his sentence and then allow him to join his unit after he has
18 served his sentence. Thank you, Your Honor.
19 **THE COURT:** Thank you.
20 All right. I'm about to state the reasons for your
21 sentence, Mr. Rogers. No count of conviction in this case
22 carries a mandatory minimum sentence. If I went under the
23 statute, you would receive not more than one year in
24 imprisonment, not more than one year supervised release, not
25 more than a $100,000 fine and a $25 special assessment.

1     Under the guidelines, you have a total offense level of
2  28, a criminal history category of Roman Numeral I.  The
3  guidelines provide for an imprisonment range up to 12 months, a
4  supervised release range of one year, a fine of $12,500 up to
5  $125,000.
6     I'm going to waive the fine in your case, because I don't
7  believe you would be able to pay the fine.  And I don't think
8  it's something that I need to penalize you with.  Restitution
9  is not applicable in this case.
10    And in imposing the sentence, I see no reason to depart
11 from the guidelines.  I want to say that I've read the letters
12 in your file also, and I realize that your situation is a
13 little different.
14    As to the other cases that have been cited by Ms. McCoy
15 and Mr. Farese on the other prison and guard and police cases,
16 most of those people pled guilty to felonies.  And when they
17 plead guilty to a felony, they lose the right to vote; they
18 lose the right to bear arms; they lose the right to hold public
19 office.
20    So they're paying other penalties that you aren't paying
21 because you pled to a misdemeanor.  I also believe in most of
22 those cases the actual acts of violence by those individuals
23 were not as pronounced as in this case.
24    So I am impressed that you've worked all your life and
25 that you've supported your family and that you're a good

1  employee, and I appreciate very much your willingness to serve
2  our country. I have talked this morning with members of the
3  JAG Corps in Jackson, and I want to give this number to you and
4  the probation officer and to Ms. McCoy. It's area code
5  601-313-6171.
6      That's Major Lawrence Austin, Headquarters MSNG-JAG
7  Office. And what he will need is a fax to him today, your
8  social security number, name, rank and unit, a statement of the
9  order that I'm going to enter in this case. And they have
10 assured me that you will be able to complete your service.
11     And this will be your sentence: Pursuant to the
12 Sentencing Reform Act of 1984, as modified by *U.S. v. Booker*,
13 it is the judgment of the Court that the defendant, Jeffery
14 Rogers, is hereby committed to the custody of the Bureau of
15 Prisons to be imprisoned for a term of five days on Count 1 of
16 the information. That day includes today.
17     Upon release from imprisonment, I'm not going to order any
18 supervision or further oversight for you because you're going
19 to be serving the country. And I'm going to trust that you're
20 not going to be a problem, and that you'll not be back in here.
21     You shall resign from your current law enforcement
22 position. And you shall surrender, resign, terminate or
23 relinquish your Peace Officers Standard Training certification
24 and never seek employment in law enforcement again. I am not
25 going to order a fine.

1   It is ordered that the defendant shall pay to the United
2 States District Court Clerk's Office, Northern District of
3 Mississippi, a special assessment of $25 for each count of
4 conviction for a total of $25 which is due immediately.
5   Pursuant to the plea agreement filed in this case, you
6 have waived all rights to appeal the conviction and or the
7 sentence imposed. Do you understand the sentence that I've
8 just stated?
9   **THE DEFENDANT:** Yes, sir.
10   **THE COURT:** And I think, in fairness, that that's not
11 as bad as getting tasered until you defecate. And I'm trying
12 to balance the need to punish, but I'm also trying to -- I
13 don't want to mess up the rest of your life. I want it to be
14 over.
15   And I want you to get a copy, Ms. McCoy, of this order
16 faxed today to Major Austin. And I have been assured that as
17 soon as you have served your time here that you'll be able to
18 join your troops and go ahead and finish your commitment to the
19 U.S. Government. Do you understand?
20   **THE DEFENDANT:** Yes, sir.
21   **THE COURT:** Is there anything further from the
22 Government?
23   **MS. MONAGHAN:** At this time, Your Honor, pursuant to
24 the plea agreement, the Government would look to dismiss the
25 remaining counts of the indictment.

1    **THE COURT:**  All right.  Those counts will be
2  dismissed.  Anything further from defense?
3    **MS. MCCOY:**  Your Honor, if I may, he will receive
4  credit for today.  Will he receive credit for when he was
5  processed originally?
6    **THE COURT:**  You may have outsmarted me.  How many
7  days did that take?
8    **MS. MCCOY:**  I think that's considered a 24-hour day,
9  Your Honor.
10    **THE COURT:**  Is that correct, Ms. Peters?
11    **MS. PETERS:**  I belive so.
12    **THE COURT:**  So he has two days behind him.  Is that
13  right?
14    **MS. MCCOY:**  Yes, Your Honor.
15    **THE COURT:**  I'm going to give him credit for that.
16  Can we do that, Ms. Peters?
17    **MS. PETERS:**  Yes, Your Honor.
18    **MS. MCCOY:**  And does he report to the marshals?
19    **THE COURT:**  The marshals will come forward at this
20  time.  I'm going to ask that he be allowed to visit with his
21  family.
22    **MS. MCCOY:**  Okay.  But he will serve this immediately
23  here?
24    **THE COURT:**  We're going to start it immediately and
25  get it over with.

1     **MS. MCCOY:** Okay.

2     **THE COURT:** And I've talked with Mr. Peters with the
3 Marshal's Service, and he understands the situation.

4     **MS. MCCOY:** Okay.

5     **THE DEFENDANT:** Your Honor, can I ask if I can go
6 outside and call my platoon sergeant? They can step out there
7 to the car with me, Your Honor; I need to let him know.

8     **THE COURT:** Somebody might loan you a phone in here.
9   Mr. Peters, can we do that?

10     **MR. PETERS:** Yes, sir.

11     **THE COURT:** Who is your sergeant?

12     **THE DEFENDANT:** Sergeant Terry James.

13     **THE COURT:** Okay. You're in the Fulton division?

14     **THE DEFENDANT:** I'm a detachment of Fulton in Iuka,
15 sir.

16     **THE COURT:** Okay. You think you can live with this?

17     **THE DEFENDANT:** Yes, sir.

18     **THE COURT:** All right. I appreciate the way you've
19 handled yourself. I'm sorry that you're here and that your
20 father was here, but we have a duty also.

21     **THE DEFENDANT:** Yes.

22     **THE COURT:** And I think you understand it. And let
23 me say to both of you that I -- punishment's not fun for the
24 Courts, particularly in situations such as these. It's not
25 easy for any of us. It's not easy for the U.S. Attorneys and

1 the Department of Justice attorneys. It's certainly not easy
2 for the defense attorneys, Ms. McCoy and Mr. Farese.
3 But sometimes you have to pay a price for what you do.
4 After you have paid that price, I think there's redemption.
5 And redemption is the rest of your life. And I want you to
6 make us all proud of.
7 What you've pled to and what your father pled to, it's
8 only a misdemeanor. It's not going to keep you from doing
9 anything else the rest of your life. So I want you to know
10 that. And I expect you to be an outstanding citizen and an
11 outstanding soldier.
12 Mr. Peters is aware of the situation. And Scotty, if you
13 would help him make that phone call, I would appreciate it.
14 All right. You're remanded to the custody of the U.S.
15 Marshal's Service. You've already got two days behind you.
16 **MS. MCCOY:** Thank you, Your Honor.
17 (THE HEARING ENDED AT 11:18 a.m.)

C E R T I F I C A T I O N

"I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter, May 8th, 2009."

/s/ Rita Davis Sisk_____
RITA DAVIS SISK, RPR, BCR, CSR #1626
Official Court Reporter